IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHANNON PAUL CHALKER, #01452646 § | | |
| Petitioner, § | | |
| § | | |
| v. § | | 3:10-CV-2443-G |
| § | | |
| RICK THALER, Director, § | | |
| Texas Department of Criminal Justice, § | | |
| Respondent. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I. Parties**

Petitioner is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID). He brings this petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. Respondent is Rick Thaler, Director of TDCJ-CID.

**II. Background**

On April 20, 2007, Petitioner was convicted of aggravated sexual assault of a child under fourteen and sentenced to seven years confinement. *State of Texas v. Shannon Paul Chalker*, No. F-0401279-S (282nd Jud. Dist. Ct. No. 4, Dallas County, Tex., April 20, 2007). On August 26, 2008, Petitioner's conviction and sentence were affirmed on direct appeal. *Chalker v. State*, No. 05-07-00570-CR (Tex. App. – Dallas, pet. ref'd). On December 10, 2008, the Texas Court of

Criminal Appeals denied Petitioner's petition for discretionary review. *Chalker v. State*, PDR No. 1314-08.

On November 4, 2009, Petitioner filed a state habeas petition. *Ex parte Chalker*, No. 74,382-01. On September 29, 2010, the Texas Court of Criminal Appeals denied the petition without written order on the findings of the trial court.

On November 21, 2010, Petitioner filed this federal petition for habeas relief. Petitioner argues:

    (1)    He received ineffective assistance of counsel when counsel:

        (A)    failed to investigate and develop exculpatory evidence;

        (B)    elicited damaging testimony;

        (C)    failed to impeach witness Kim Gardner;

        (D)    failed to impeach the victim;

        (E)    failed to object to and/or elicited inadmissible evidence;

        (F)    failed to object to improper closing arguments;

        (G)    failed to object to the court's improper burden shifting; and

    (2)    The trial court violated his due process rights by blocking crucial evidence.

On February 10, 2011, Respondent filed his answer. On October 12, 2011, Petitioner filed a reply. On October 18, 2011, Petitioner filed a supplemental reply. The Court now determines the petition should be denied.

## III. Factual Background

The following factual background is taken from the opinion of the Texas Fifth District Court of Appeals.

D.G., the complainant, was seventeen years old at the time of trial. D.G. testified that during the summer when he was nine years old, his mother, Kimberly Gardner, took him to visit [Petitioner] and Tracy Brooks at their apartment in Duncanville, Texas. [Petitioner] and Brooks, who was D.G.'s cousin, lived in the apartment with Brook's daughter, Destiny, and Brooks's and [Petitioner]'s daughter, Montana. Although D.G. could not recall the year the visit took place, he agreed, because he was born in October 1989, that the summer of 1999 sounded correct.

When D.G. and Gardner arrived at the apartment, D.G. began watching Speed Racer in the living room while Destiny and Montana played in their room. [Petitioner], Brooks and Gardner began to drink beer and talk. According to D.G., [Petitioner] asked Gardner if D.G. could have a drink with a low percentage of alcohol. Gardner said no. [Petitioner] went into the restroom for three or four minutes and then signaled for D.G. to join [Petitioner] in the restroom. [Petitioner] put the bottle of alcohol into the restroom cabinet and told D.G. he could "take a couple of swigs." After [Petitioner] left the restroom, D.G. took a drink of the alcohol, but did not like the taste. D.G. then returned to the living room.

Gardner and Brooks subsequently went to the store to purchase more beer. According to Gardner, they were in a dry area and had to drive some distance to obtain beer. Gardner testified [Petitioner] knew how long Gardner and Brooks would be gone to purchase beer. D.G. testified that approximately five minutes after Gardner and Brooks left, [Petitioner] picked D.G. up by his neck and pushed him towards the restroom. D.G. tripped over a rug in the restroom and fell down. [Petitioner] then removed his belt and D.G. thought he was in trouble and was going to be spanked. Instead, [Petitioner] told D.G. to get on his knees and place his stomach over the edge of the bathtub. [Petitioner] then anally raped D.G. After completing the assault, [Petitioner] threatened to kill Gardner and Tracy if D.G. told anyone about the assault.

D.G. testified that after Gardner and Brooks returned to the apartment, D.G. asked Gardner if they could leave as soon as possible. Gardner asked if D.G. was going to be sick, but D.G. told her that he was fine. Gardner and D.G. stayed at the apartment for another hour-and-a-half to two hours. Gardner did not recall D.G. expressing any urgency about leaving the apartment.

When D.G. was fourteen years old, he told a friend about the assault. He subsequently told Brooks and five other individuals about it. Finally, during a fight with Gardner, D.G. told her about the assault, and Gardner contacted the police.

[Petitioner] denied the assault and offered his apartment lease to show he did not live in the apartment in Duncanville until August 2000. [Petitioner] testified D.G. asked for a drink of [Petitioner]'s alcohol and [Petitioner] told D.G. to ask his mother. Gardner said no. Approximately fifteen minutes later, D.G. went to the restroom.

> [Petitioner] opened the restroom door and saw D.G. drinking the alcohol. [Petitioner] told D.G. to come out and show Gardner. Gardner "began screaming and cussing and carrying on," and [Petitioner] told Gardner and D.G. they had to leave. [Petitioner] never saw either Gardner or D.G. again. [Petitioner] contended D.G.'s allegations stemmed from [Petitioner's] refusal to allow Brooks's current husband to adopt Montana.

*Chalker v. State*, No. 05-07-00570-CR at 1-2.

## IV.  Discussion

### A.  Standard of Review

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254, provide:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C.A. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal

principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See Williams*, 529 U.S. at 307.

**B.     Ineffective Assistance of Counsel**

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

**1.     Exculpatory Evidence**

Petitioner argues his counsel failed to interview witnesses and present exculpatory evidence. He states the affidavits of his aunt, Katherine Schauss and his grandmother, Marie McMillian, show that (1) witness Kim Gardner had a motive to lie in her testimony, (2) Kim Gardner and Tracy Wilson coached D.G. to make up the allegations against Petitioner, and (3)

D.G.'s allegations were not true because Petitioner did not live in the Duncanville apartment until August, 2000.

Both Ms. Schauss and Ms. McMillian stated in their affidavits that Petitioner did not live in Duncanville, Texas, until the year 2000. (*Ex parte Chalker* at 83, 85.) Whether the assault occurred in 1999, or 2000, however was not critical to the case. The victim was unsure of the year the assault occurred. (Trial Tr. Vol. 3 at 11.) Additionally, defense counsel entered a lease contract into evidence showing that Petitioner did not rent the Duncanville apartment until 2000. (Trial Tr. Vol. 4 at 137-38).

Both Schauss and McMillian stated they would testify that Petitioner's ex-wife, Tracy Wilson, wanted Petitioner to terminate his parental rights to their child Montana, but Petitioner refused to do so. Ms. McMillian also stated that Tracy Wilson hated Petitioner. (*Ex parte Chalker* at 84, 85). McMillian stated she believe Tracy Wilson was "behind the false allegations" against Petitioner. (*Id*. at 85.) Tracy Wilson, however, did not testify at trial. Ms. Schauss's and Ms. McMillian's testimony could therefore not have been used at trial to rebut statements by Ms. Wilson. Testimony regarding any statements made by Ms. Wilson would have been subject to a hearsay objection.

Additionally, on state habeas review, defense counsel stated he chose to call Petitioner's mother, Doris McMillian, as a witness rather than his grandmother, Marie McMillian. Counsel explained, "it was decided that the client's mother would make a better character witness due to her inherent credibility developed by her surrender of Defendant when she knew he was wanted in a federal case and guilty of that federal crime." (*Id.* at 133.) Petitioner has not shown that his counsel's conduct fell outside of reasonable trial strategy. *See Wilkerson v. Collins*, 950 F.2d

1054, 1065 (5th Cir. 1992).

Finally, Petitioner testified that Tracy Wilson repeatedly tried to convince him to terminate his parental rights to Montana. (Trial Tr. Vol. 4 at 144.) He testified D.G. made up the allegations against him because he would not terminate his parental rights. (*Id*. at 154.) Petitioner has failed to show that the state court's decision to deny relief on this claim was unreasonable. This claim should be denied.

### 2. Failed to Impeach Kim Gardner

Petitioner argues his counsel was ineffective because he failed to impeach witness Kim Gardner. He cites trial testimony from Gardner stating she did not specifically know Petitioner's location at the time the victim told her about the incident. The record states:

> DEFENSE COUNSEL: Did you know where [Petitioner] was at that time?
>
> GARDNER: Not specifically. I don't even believe Tracy knew. We knew something about – she said she thought that he was somewhere in New Mexico.
>
> DEFENSE COUNSEL: Did you think that he was out in the free world or in prison?
>
> GARDNER: I believe she was under the impression that he had been released from the New Mexico prison system.

(Trial Tr. Vol. 4 at 44.) Petitioner states this testimony contradicts a police report from three years earlier in which an officer wrote that Gardner said Petitioner was incarcerated in New Mexico and later extradited to Texas. (Pet'r State Pet. Ex. K.) Petitioner states this "inconsistency" shows that Gardner knew his location but lied on the witness stand.

Petitioner fails to show his counsel was ineffective for not cross-examining Gardner on this issue. Petitioner's location at the time of the victim's outcry to his mother, which was

**Findings, Conclusions and Recommendation
of the United States Magistrate Judge**    Page -7-

approximately five years after the assault, was not a material issue in the case. Further, Gardner's trial testimony and the police report are substantially similar and do establish perjury. Petitioner's claim is without merit.

### 3. Failed to Impeach D.G.

Petitioner argues his counsel was ineffective because he failed to impeach the victim's credibility by comparing the victim's trial testimony with two police reports and the victim's written statement to the police. First, defense counsel did cross-examine the victim about the police statement and police reports. (Trial Tr. Vol. 3 at 69-76.) Second, the victim's testimony at trial was not inconsistent with his prior police statement or the police reports. Petitioner attempts to show inconsistent statements by citing examples such as the police officer's report stating that Petitioner "got [the victim's] pants down," while at trial the victim stated that Petitioner told him to take his pants down. (*Id*. at 21.) Also in the police report, the officer wrote that Petitioner "put" the victim on the floor, while the victim testified he kneeled on the floor after Petitioner told him to kneel. (*Id*.) Petitioner has failed to show his counsel was ineffective in cross-examining the victim.

Additionally, Petitioner claims his counsel failed to admit the police reports and the victim's written statement into evidence. These reports and statement, however, were admitted as defendant's exhibits 2 through 5, and state's exhibit 2. This claim is without merit.

### 4. Apartment Floor Plan

Petitioner claims his counsel was ineffective when he questioned D.G. and Kim Gardner about the floor plan of the Duncanville apartment. Defense counsel, however, admitted into evidence three different apartment floor plans. (Trial Tr. Vol. 3 at 50; Defendant's Ex. 1.) D.G.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge** Page -8-

stated none of the floor plans were identical to the apartment where the assault occurred. (Trial Tr. Vol. 3 at 50.) Defense counsel cross-examined both D.G. and Kim Gardner about the floor plan of the apartment. (Trial Tr. Vol. 3 at 45, 48-50 and Vol. 4 at 30-31.)

Petitioner claims his counsel should have questioned his mother about the apartment floor plan during her testimony. Defense counsel, however, used Petitioner's testimony to counter the testimony of D.G. and Kim Gardner. Petitioner testified he did not rent the floor plan identified by D.G., and that the floor plan he rented did not contain a hallway and bathroom in the locations alleged by D.G. and Gardner. (Trial Tr. Vol. 4 at 134-35.) Petitioner has failed to show the result of the trial would have been different if counsel had questioned Petitioner's mother about the apartment floor plan.

### 5.  Inadmissible Evidence

Petitioner argues his counsel was ineffective because he elicited inadmissible evidence from D.G.'s therapist, Dr. Massoll, and from police investigator Brett Beene. During defense examination of these witnesses, Dr. Massoll stated he believed the victim was credible. Investigator Beene stated that Dr. Massoll's opinion regarding the victim's credibility was important to him. Plaintiff argues this testimony improperly bolstered the victim's credibility. Investigator Beene, however, simply stated that Dr. Massoll's opinion was important to him. Petitioner has failed to show how this statement was inadmissible. Further, although Dr. Massoll stated his opinion regarding the victim's credibility, defense counsel stated his strategy was to show that Dr. Massoll was biased and prejudice regarding the victim's credibility. (*Ex parte Chalker* at 134.) Petitioner has not shown that his counsel's conduct fell outside of reasonable trial strategy. *See Wilkerson*, 950 F.2d at 1065.

### 6. Criminal Record

Petitioner argues his counsel was ineffective because he admitted evidence of Petitioner's prior criminal record on direct-examination of Petitioner and Petitioner's mother.

Under Tex. R. Evid. 609(a), a defendant can be questioned about his prior felony convictions or convictions involving moral turpitude in the guilt/innocence phase of the trial if he chooses to testify. Defense counsel stated he chose to admit Petitioner's prior criminal record on direct-examination to "attempt to control the damage" from these admissible convictions and to "control the narrative of Defendant's credibility." (*Ex parte Chalker* at 133.) Petitioner has not shown that his counsel's conduct fell outside of reasonable trial strategy.

### 7. Failed to Discover Facts

Petitioner argues his counsel failed to discover that the state concealed the fact that Tracy Wilson was the outcry witness, and failed to call Tracy Wilson as a witness.[1] The outcry witness is "the first person, 18 years or older, to whom the child makes a statement that in some discernible manner describes the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). Under Texas law, an outcry witness is allowed to testify regarding a victim's outcry statements, and those statements are not excluded by the hearsay rules. TEX. CODE CRIM. P. art. 38.072. In this case, Tracy Wilson did not testify. Therefore the outcry statements were not admitted.

Petitioner claims, however, that counsel should have discovered that Tracy Wilson was the outcry witness and counsel should have called Wilson to testify. Petitioner states Wilson

---

[1] Petitioner states he does not raise a claim pursuant to *Brady v. Maryland*, 373 U.S. 83 (1969). (Pet. Reply at 7.)

would have testified that she and Petitioner did not rent the Duncanville apartment until 2000, and that D.G. and Kim Gardner did not truthfully describe the apartment's floor plan. (Pet. Mem. at 23.) Petitioner has submitted no affidavit or other evidence that Wilson would have testified favorably for the defense. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating that to establish the requisite *Strickland* prejudice, Petitioner must show that the testimony would have been favorable); *see also See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ . . . ."). This claim should be denied.

   8.   **Closing Arguments**

Petitioner argues his counsel failed to object when the prosecutor argued in closing arguments that Petitioner had been alone with the victim. Petitioner claims the prosecutor's statements were improper because Petitioner testified he was never alone with the victim.

Under Texas law, there are four proper categories of jury arguments: (1) summation of evidence; (2) reasonable deductions from the evidence; (3) answer to the arguments of opposing counsel; and (4) a plea for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The Texas Court of Criminal Appeals has stated that in final arguments, counsel may "draw from the facts in evidence all inferences that are reasonable, fair and legitimate [and] he has wide latitude without limitation in this respect so long as the argument is supported by the evidence and offered in good faith." *Vaughn v. State*, 607 S.W.2d 914, 922-23 (Tex. Crim. App. 1980).

In this case, the victim testified that Petitioner was alone with him and sexually assaulted him. The prosecutor's argument was therefore reasonable and supported by the evidence,

of the United States Magistrate Judge**          Page -11-

notwithstanding Petitioner's testimony to the contrary. This claim should be denied.

**9.     Burden Shifting**

Petitioner argues the trial court shifted the burden of proof to the defense when the judge stated that he believed the victim was credible and that the victim had no reason to lie about the assault. (Trial Tr. Vol. 4 at 178-79.) Petitioner argues his counsel should have objected to this alleged burden-shifting. The Court finds the trial judge did not shift the burden of proof to the defense, but simply made a credibility determination between the victim and Petitioner. Petitioner's claim is without merit.

**C.     Due Process Violation**

Petitioner argues the court violated his due process rights when it "unlawfully blocked crucial evidence" by limiting the testimony of his fiancé, Deanna Liles. Liles worked as a corrections officer for the Texas Department of Criminal Justice. She attempted to testify regarding "the aftermath of male on male" rape. The court disallowed this testimony, finding that Ms. Miles was not qualified to give an expert opinion on sexual abuse of a child by an adult. (Trial Tr. Vol. 4 at 101.) Petitioner has offered no evidence that Ms. Miles was an expert in child sexual abuse, or had any qualifications in this area. His claim is without merit and should be denied.

**D.     Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceedings.

**RECOMMENDATION**:

The Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 20th day of December, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).